UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JOHNNIE KAYE RAYMOND, | § | |
| | § | |
| Plaintiff, | § | CIVIL ACTION NO. |
| v. | § | |
| | § | SA-06-CV-0555 NN |
| HENRY M. PAULSON, Secretary, | § | |
| U. S. Department of the Treasury, | § | |
| | § | |
| Defendant. | § | |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This order grants the motion for summary judgment filed by defendant Henry M. Paulson, Secretary, United States Department of Treasury (the Department).[1]  I have jurisdiction to resolve the motion because this case involves questions of federal law[2] and because the parties consented to my jurisdiction.[3]

Plaintiff Johnnie Kaye Raymond sued the Department for unlawful employment discrimination.  Raymond—a Department employee— alleges that she was discriminated against on the basis of gender, race, and age; and retaliated against because she has a history of filing equal employment opportunity (EEO) complaints.  Raymond characterizes herself as having a history of engaging in protected activity.[4]  Raymond bases her claims on a 15-day suspension that

---

[1]Docket entry # 33.

[2]*See* 28 U.S.C. § 1331.

[3]*See* docket entry # 13.

[4]Docket entry # 46, exh. 14, ¶ 8.

1

began on May 9, 2005 and ended on May 24, 2005.  The Department maintains that it is entitled

to summary judgment on each of Raymond's claims.  For the reasons discussed below, I agree.

### Raymond's Disparate Treatment Claims

Federal law prohibits employment discrimination based on gender, race or age.[5]  Where,

as here, there is no evidence of direct discrimination, a plaintiff must first present a prima facie

case of discrimination.[6]  To do so, the plaintiff must produce evidence that: (1) she is a member

of a protected class; (2) she was qualified for the position; (3) she was subject to an adverse

employment action; and (4) others similarly situated were treated more favorably.[7]  In showing

the last element, the plaintiff must show that the employer gave preferential treatment to persons

outside her classification(s) under "nearly identical" circumstances.[8]

The Department maintains that it is entitled to summary judgment on Raymond's

disparate treatment claims because Raymond cannot present evidence showing that similarly-

situated employees outside her classifications were treated more favorably than she was treated.[9]

The Department's summary-judgment evidence shows that Raymond was suspended for reasons

unrelated to gender, race, and age.  Specifically, the Department's summary-judgment evidence

shows that Raymond was suspended for: (1) being absent without leave, (2) failing to follow

---

[5]*See* 42 U.S.C. § 2000e-2(a)(1) (race and sex); 29 U.S.C. § 623 (age).

[6]*See Turner v. Baylor Richardson Med. Ctr*, 476 F.3d 337, 345 (5th Cir. 2007).

[7]*See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

[8]*See Wyvill v. United Companies Life Ins. Co.*, 212 F.3d 296, 304 (5th Cir. 2000).  *See also Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 514 (5th Cir.2001).

[9]Docket entry # 33, pp. 15-6.

proper leave procedures, (3) being discourteous and disruptive with her supervisor, (4)

contradicting her supervisor's instructions and/or defying her supervisor's instructions, (5)

physically pushing or shoving her supervisor, and (6) failing to provide complete and accurate

information on official documents.[10]   The Department also presented a copy of the final decision

of the Merit Systems Protection Board which concluded  that the 15-day suspension was

reasonable and promoted the efficiency of the Department.[11]   The Department also presented

summary-judgment evidence showing a disciplinary history that includes taking more sick leave

than needed for illness and medical appointments, confrontations with Raymond's first-line

supervisor, and disregarding the supervisor's instructions.  This evidence entitles the Department

to summary judgment unless Raymond can present summary-judgment evidence raising a fact

question about whether similarly-situated employees were treated more favorably because it

shows that Raymond was suspended for the six reasons listed above.

Raymond failed to present summary-judgment evidence raising a fact question about

whether similarly-situated employees outside her classifications were treated more favorably.  In

her response, Raymond complained that two other employees were not disciplined for making

false entries on official documents.[12]   I understand Raymond to complain that although she was

disciplined for signing a timecard reflecting that she was entitled to be paid for a 3-day

suspension period, a Caucasian co-worker actually completed the timecard and her Caucasian

---

[10]Docket entry # 34, exh. 8 (notice of proposed 30-day suspension, dated Sept. 29, 2004) &
(decision letter imposing a 15-day suspension, dated Apr. 18, 2005).

[11]Docket entry # 34, exh. 1, pp. 10-13.

[12]Docket entry # 46, pp. 12-3.

supervisor signed the timecard.  Raymond suggests that those actions were equivalent to her signing the timecard and receiving compensation for the 3-day suspension period.  But completing a timecard for a co-worker and approving a subordinate's timecard are different than accepting compensation for a period of time for which you are not entitled to compensation.  Of all involved, Raymond was in the best position to know that she was not entitled to receive compensation for the 3-day suspension period.  In addition, Raymond presented no summary judgment evidence indicating that either of the other individuals had comparable disciplinary histories or received compensation for suspension periods.

Raymond also asserted that others outside of her protected groups were permitted to take sick leave as needed.  I understand Raymond to complain that she was the only person required to support absences for illness with medical evidence, provide written explanations for absences based on emergencies, and obtain advance approval for other absences.[13]  But Raymond provided no summary judgment indicating that other employees took leave as frequently as she did—144.5 hours of annual leave and 363 hours of sick leave in a five-month period.  Raymond has not shown that she was similarly situated to the other employees inasmuch as there is no indication that anyone had a leave history or disciplinary history similar to hers.  In response to the Department's interrogatory—"Do you contend that any IRS employees outside your protected group(s) were not suspended in circumstances similar to your own, or were otherwise provided preferential treatment compared to you?"—Raymond answered, "There is none that I am aware of."[14]  This response admits that employees outside Raymond's protected classifications(s) were

---

[13]*See* docket entry # 34, exh. 2 (memorandum of leave restriction).

[14]Docket entry # 34, exh. 18, p. 9, interrogatory 11.

not treated more favorably.  In the absence of evidence showing that the Department gave preferential treatment to persons outside Raymond's classification(s) under nearly identical circumstances, the Department is entitled to summary judgment on Raymond's disparate impact claims.

### Raymond's Retaliation Claim

Title VII prohibits employers from retaliating against employees who have enaged in protected activity.[15]  "A plaintiff establishes a prima facie case for unlawful retaliation by proving (1) that she engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse employment action."[16]  The Department maintains that it is entitled to summary-judgment on Raymond's retaliation claim because there is no evidence that a causal link existed between Raymond's prior EEO activity and her 15-day suspension.  The Department argues that because nearly all of Raymond's complaints about discriminatory conduct are directed at her first-line supervisor—Ann Ackroyd—Raymond cannot present evidence showing that the person who made the decision to suspend her—Raymond's third-line supervisor, Glenn Henderson—was influenced by Raymond's prior protected activity.

To support its argument, the Department presented Raymond's responses to administrative and federal court interrogatories.  Responding to Interrogatory Nos. 9-12 during her administrative proceeding, Raymond complained about her treatment by Ackroyd and Raymond's second-line supervisor, Susan Graham; Ackroyd's supervision; and her 3-day

---

[15]*See* 42 U.S.C. § 2000e-3(a).

[16]*Long v. Eastfield College*, 88 F.3d 300, 304 (5th Cir. 1996).

suspension by Ackroyd and Graham.[17]  She also stated that she complained in a letter to

Henderson about how she was being treated, but that Henderson never acknowledged her letter.[18]

When asked about who had discriminated against her during this lawsuit, Raymond identified

Ackroyd and Graham.[19]  These responses are important because the responses identify the

persons that allegedly discriminated against Raymond.  Logically, those are the persons who

would retaliated against Raymond for her EEO activity.  But the individuals Raymond

identified—Ackroyd and Graham—did not make the decision to place Raymond on the 15-day

suspension challenged in this lawsuit.

　　　　The Department's summary-judgment evidence shows the following.  Graham

recommended that Raymond serve a 30-day suspension for: (1) being absent without leave, (2)

failing to follow proper leave procedures, (3) being discourteous and disruptive with Ackroyd,

(4) contradicting Ackroyd's instructions and/or defying Ackroyd's instructions, (5) physically

pushing or shoving Ackroyd, and (6) failing to provide complete and accurate information on

official documents.[20]  Raymond challenged the bases for the suspension in her oral reply to the

proposed 30-day suspension. [21]  Henderson then reviewed Raymond's disciplinary history and

---

[17]Docket entry # 34, exh. 7, responses to interrogatory nos. 9-12 & 14.

[18]*See id*. at response to interrogatory no. 11.

[19]Docket entry # 34, exh. 18, responses to interrogatory no. 4.

[20]Docket entry # 34, exh. 8 (notice of proposed 30-day suspension, dated Sept. 29, 2004) & (decision letter imposing a 15-day suspension, dated Apr. 18, 2005).

[21]Docket entry # 34, exh. 10.

determined that a 15-day suspension would promote the efficiency of the Department.[22]  In his decision letter, Henderson explained that Raymond was required to follow different leave procedures than her co-workers because she demonstrated a pattern of taking leave on days when she was needed in the office to perform time sensitive duties and because she failed to follow proper procedures for requesting leave.[23]  Henderson attested that he was the deciding official for Raymond's 15-day suspension and stated that he decided to suspend Raymond after reviewing her case, without conferring with Ackroyd or Graham.[24]  He explained that a 15-day suspension was the least severe action required for the desired corrective effect.[25] He also stated that Raymond's race, gender, age, and prior EEO history played no role in his decision.[26] This evidence entitles the Department to summary judgment unless Raymond can present summary-judgment evidence rasing a fact question about the existence of a casual connection between Raymond's prior EEO activity and Henderson's decision to suspend Raymond.

Raymond failed to present summary-judgment evidence raising a fact question about the existence of a casual connection between Raymond's prior EEO activity and Henderson's decision to suspend Raymond.  Instead, Raymond made vague arguments about whether the Department's reasons for suspending her were a pretext for discrimination and retaliation.[27]  She

---

[22]Docket entry # 34, exh. 11.

[23]*See id.*

[24]Docket entry # 34, exh. 12.

[25]*See id.*

[26]*See id.*

[27]Docket entry # 46, p. 19.

complained that Henderson and Ackroyd knew about her health problems and her leave requests, but that Ackroyd never told her that her requests were not going to be approved.  She further complained about being charged for being absent-without-leave after attending a newcomers welcoming and leaving for the day.  She asserted that it was standard practice for employees on leave to attend work events like birthday celebrations and retirements without being considered absent-without-leave.  But Raymond presented no summary-judgment evidence substantiating her assertions.  And, she did not explain how her arguments raise a fact question about whether Henderson ordered the 15-day suspension because of her prior EEO activity.  She did, however, confirm that she did not know Henderson.[28]  When asked during her deposition about why she thought Henderson retaliated against her, Raymond explained that the EEO authorities held a meeting about her complaints and that Henderson had not done anything about how she was being treated.[29]  She also confirmed that Ackroyd and Graham were the persons that allegedly discriminated against her.  In her affidavit, Raymond referred to "alleged discriminatory treatment at the hands of her former first line supervisor, Ann Ackroyd (Ackroyd) and second line supervisor, Susan Graham (Graham)."[30]  Nothing discussed above raises a fact question about whether Henderson was influenced by Raymond's prior EEO activity or whether the suspension constituted retaliation for prior EEO activity.  Nothing raises a fact question about whether a causal link existed between Raymond's prior EEO activity and her suspension.  In the absence of evidence raising a fact question, the Department is entitled to summary judgment on

---

[28]Docket entry # 35 (exh. 3 to docket entry # 33), p. 83.

[29]*See id.* at pp. 83-4.

[30]Docket entry # 46, exh. 14, ¶ 8.

Raymond's retaliation claim.

### Court's Orders

For the reasons discussed in this order, I GRANT the Department's motion for summary judgment (docket entry # 33).  Accordingly, I will enter summary judgment in favor of the Department on Raymond's disparate impact claims and her retaliation claim.   I DENY all pending motions as moot.

**SIGNED** on March 4, 2008.


*Nancy Stein Nowak*

NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE